IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tremon L. Doctor, | ) Civil Action No.:2:14-cv-3774-MGL-MGB |
| | ) |
| Petitioner, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| v. | ) **OF MAGISTRATE JUDGE** |
| | ) |
| Robert Stevenson, *Warden*, | ) |
| | ) |
| Respondent. | ) |
| | ) |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 19; see also Dkt. No. 20.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on September 22, 2014. (Dkt. No. 1 at 16 of 16; see also Dkt. No. 1-3.) On January 28, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 19; see also Dkt. No. 20.) By order filed January 28, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 21.) Petitioner filed a Response in Opposition to the Motion on March 4, 2015. (Dkt. No. 23.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Broad River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In September of 2005, the Richland County Grand Jury indicted Petitioner for murder. (R. at 35-36.) In February of 2007, the Richland County Grand Jury indicted Petitioner for armed robbery, conspiracy to commit kidnapping, and carjacking. (R. at 29-34.) Petitioner was represented by Megan Lee, Esquire, and Micah Leddy, Esquire. (See R. at 13.) On March 31, 2008, the Petitioner pled guilty to voluntary manslaughter, carjacking, and armed

1

robbery before the Honorable J. Michelle Childs. (R. at 3-28.) That same day, Judge Childs sentenced Petitioner to twenty-five years on the voluntary manslaughter conviction, ten years for armed robbery, and five years for carjacking. (See R. at 27.) Those sentences were set to run concurrently to each other. (See R. at 27.)[1]

Petitioner appealed and was represented by LaNelle C. Durant, Esquire, of the South Carolina Commission on Indigent Defense. (See R. at 124.) In an Anders[2] brief filed on November 3, 2008, Petitioner raised the following issue:

> Did the trial court err in not insuring that appellant's guilty plea complied with the mandate of Boykin v. Alabama?

(R. at 127; see also R. at 124-31. ) In an unpublished opinion filed on November 23, 2009, the South Carolina Court of Appeals dismissed the appeal. (R. at 132-33.)[3] The remittitur was issued on December 9, 2009. (Dkt. No. 20-3.)

Petitioner filed an application for post-conviction relief ("PCR") on October 26, 2010. (R. at 38-47.) Petitioner raised the following grounds for relief in his PCR application: ineffective assistance of counsel; unintelligent and involuntary guilty plea; and due process violation, Brady violation. (R. at 39.) In support of those grounds, Petitioner asserted, *inter alia*,

> A-1) . . . Counsel [was] ineffective for advising applicant he would get life without the possibility of parole if applicant proceeded to trial, which forced applicant into a guilty plea. Counsel stated that she could not win at trial on warrant numbers I-979436, I-979437, and I-979438, because she could not explain why applicant was caught in vehicle which contained paperwork that belonged to victims. Co-defendant (Keith Goins), clearly stated on the night in question . . . that he went back to where crime took place and picked applicant up, and that applicant took no part in crime. . . .

---

[1]This sentence was pursuant to a negotiated sentencing range of between twenty and thirty years. (See R. at 23, 57.)

[2]Anders v. California, 386 U.S. 738 (1967).

[3]According to the South Carolina Court of Appeals' opinion, Petitioner filed a *pro se* brief. (See R. at 132.) However, the undersigned has been unable to locate such brief in the record.

A-2) Counsel ineffective in murder case for failing to request charges on involuntary manslaughter. Counsel's conduct was deficient because applicant's statement as well as statement from the State's key witness supported the involuntary manslaughter.

A-3) Counsel ineffective for failing to have preliminary hearing, not knowing ahead of time when trial was scheduled, failing to adequately investigate all evidence, and failing to interview witnesses; counsel came to applicant on Thursday, March 27, 2008, and stated that trial was to start on Monday, March 31, 2008. Counsel did not try to prepare for the task at hand. Counsel asked applicant did he know whether or not if the victims was still around, and did applicant think that victims was going to show up for trial; therefore counsel could not have interviewed them.

B-1) Guilty plea was not voluntarily and intelligently given . . . The record in this case indicates the trial court failed to adequately advise appellant of his constitutional rights so that he could waive those rights knowingly and intelligently. . . . The Judge advised appellant of these rights in a cursory manner that failed to convey the importance of these rights. Thus the plea was not voluntarily and intelligently given because the full consequences of the plea was not explained.

B-2) Guilty plea was not voluntarily and intelligently given; counsel stated that she could not win trial and if applicant was to go through with trial he would be given life without parole. March 31, 2008, after being told this, applicant asked counsel to get him in front of Judge for relieve [sic] of counsel. Counsel then got upset and left. . . . Counsel then came back stating that the Judge (Childs) would not allow applicant to be relieved of counsel and that applicant had one of two choices: start trial and risk getting life sentence or take plea, so applicant was forced to take the plea.

C) Forensic evidence was not fully provided nor were all witness interviews provided by the prosecution in violation of Brady and my due process.

(R. at 44-47.)

On February 14, 2012, an evidentiary hearing was held before Judge Clifton B. Newman, Jr. (R. at 55-113.) Petitioner was present and represented by Charles T. Brooks, III, Esquire. (See R. at 55.) In a written order dated February 27, 2013, Judge Newman denied the application for post-conviction relief and dismissed the petition. (R. at 114-22.)

Petitioner, through his attorney Lanelle Cantey Durant of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on October 23, 2013. (Dkt. No. 20-4.)[4] Through counsel, Petitioner raised the following issue:

---

[4]See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

Did the PCR court err in failing to find plea counsel ineffective for not insuring that petitioner's plea was entered freely, voluntarily and knowingly?

(Dkt. No. 20-4 at 3 of 11.) Ms. Durant also filed a petition to be relieved as counsel. (Dkt. No. 20-4 at 10 of 11.)

In an order dated August 21, 2014, the Supreme Court of South Carolina denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 20-5.)[5] The matter was remitted to the lower court on September 8, 2014. (Dkt. No. 20-6.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

**Ground One**: The state trial court erred in failing to find plea counsel ineffective pursuant to Boykin v. Alabama.

**Supporting Facts**: Trial counsel's misadvised Petitioner in pleading to the offenses would result in a lesser included offense. (1) The court sentence Petitioner under section 16-3-50; voluntary manslaughter; section 16-11-330(A) armed robbery and section 16-3-1575(B)(1) on testimony of "words alone" without more are not sufficient evidence to sustain a sentence and conviction under the law.

**Ground One(A)**: Ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 688 (1984) and ineffective assistance of appellate counsel, Lucy v. Evitts, 469 U.S. 396 (1985).[6]

**Ground Two**: Counsel erred in dissuading Petitioner in entering a involuntary plea: Boykin v. Alabama, 395 U.S. 238 (1969).

**Ground Three**: Was Petitioner prejudiced by counsel's constitutionally ineffective performance under Hill v. Lockhart, 474 U.S. 52.

**Ground Four**: Did the court's erred in finding "words alone" are sufficient evidence to support a conviction and sentence under S.C. Code Ann. § 16-1-10?

**Ground Five**: Did the court's erred in finding "words alone" are sufficient evidence to support a sentence and conviction under S.C. Code Ann. § 16-30-330(A)?

---

[5]The South Carolina Supreme Court's order indicates that Petitioner filed a *pro se* response to the Johnson petition. (See Dkt. No. 20-4.) However, the undersigned has been unable to locate such filing in the instant record.

[6]Because Ground One in his § 2254 petition and Ground One in his memorandum are not identical, the undersigned has numbered them differently.

4

**Ground Six**: Did the court's erred in finding "words alone" are sufficient evidence to support a sentence and conviction under S.C. Code Ann. § 16-3-1075(B)(1)?

(Dkt. No. 1; Dkt. No. 1-1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (<u>See</u> Dkt. No. 19; <u>see also</u> Dkt. No. 20.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

### **A**.  **Grounds One, One(A), Two, and Three**

Although Petitioner's arguments are not easy to follow, Petitioner asserts in Ground One, Ground One(A), Ground Two, and Ground Three that trial counsel was ineffective, and his guilty plea was involuntary. (<u>See</u> Dkt. No. 1 at 6 of 16; Dkt. No. 1-1 at 1-4 of 9.) In Ground One, Petitioner asserts that trial counsel "misadvised Petitioner in pleading to the offenses would result in a lesser included offense" and contends that "'words alone' without more are not sufficient evidence to sustain a sentence and conviction under the law." (Dkt. No. 1.) In Ground One(A) and Ground Two, Petitioner asserts that "armed robbery and carjacking should be treated as one offense" given that they "occur[red] . . . so closely in point of time that they may be considered as one offense." (Dkt. No. 1-1 at 1 of 9.) Petitioner essentially asserts that he was merely present at the crime of armed robbery and carjacking, but he did not participate in the actual crimes. (Dkt. No. 1-1 at 2 of 9.) Petitioner states,

> At no time did Ms. Lee <u>object</u> to allege information Respondent proffer to the court as sufficient proof that Petitioner was guilty of armed robbery or carjacking. Under

the law "words alone" is not sufficient evidence. Thus was prejudice due to the fact that counsel's knew the so called victim(s) or Petitioner accuser did not want to come to trial.

(Dkt. No. 1-1 at 2 of 9.) In Ground Three, Petitioner asserts counsel was ineffective in that she "deceive[d Petitioner] into pleading to voluntary manslaughter instead of the lesser included offense of involuntary manslaughter." (Dkt. No. 1-1 at 3 of 9.) Petitioner contends in Ground Three that he believed he was pleading guilty to involuntary manslaughter. (Id.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The state court addressed Petitioner's claim of ineffective assistance of counsel and involuntary guilty plea. (See R. at 116-21.) The PCR court noted Petitioner's testimony that Petitioner believed "he was not informed about relevant information on his case by counsel" and that Petitioner stated "he entered the guilty plea because counsel advised him she could not win the case at trial." (R. at 116.) The PCR court's order further details Petitioner's testimony as follows:

> Applicant stated he was "adamant" with counsel that he wanted a trial, but counsel advised him to plead guilty because there was enough evidence to find him guilty of the charges under the "hand of one is the hand of all" theory of accomplice liability. He noted he would have liked to request a mere presence jury instruction at trial or to have argued third party guilt to a jury, and said he thought the appropriate charge brought against him should have been aiding and abetting. Applicant contended he had defenses to all of the charges which he wanted to present at trial, including a self-defense argument against the murder charge. According to Applicant's PCR testimony, he was merely acting in self-defense against victim when victim approached him aggressively while intoxicated. Applicant went on to say victim was an abuser of drugs/alcohol and was much larger than him, so he struck victim to defend himself. Applicant stated counsel failed to conduct a proper investigation into the facts and alleged counsel never discussed the possibility of a self-defense theory to be used at trial.
>
> On cross-examination, Applicant stated he answered the questions at his plea hearing as he did only because counsel advised him to answer in that manner. Further, Applicant alleges he lied to Judge Childs while under oath at the plea hearing when he stated the answers given during the hearing were his own and had not been suggested by anyone else.

(R. at 116-17.)

The PCR court also summarized the testimony of attorney Micah Leddy, who represented Petitioner. (See R. at 117-19.) The court stated,

Micah Leddy (hereafter "Leddy") testified he served as second-chair counsel in the matter to Assistant Public Defender Megan Lee (referred to herein as "counsel"), who was not present at the PCR hearing as she has since relocated overseas to England. Leddy noted he helped prepare the case for trial and would have been privy to the discovery materials when they were received. Leddy noted the state's theory on the murder charge was that Applicant struck victim with a shovel after a disagreement, from which victim died as a result of blunt force trauma to the head. He noted Applicant's rendition of the facts leading to the Carjacking charge were not plausible, and he stated Applicant had served as the driver for that crime.

Leddy said he remembered that he and counsel were very worried about Applicant being convicted of the Armed Robbery first, then being tried separately on the Murder charge as they arose from wholly separate and distinct incidents occurring more than a year apart. In fact, Leddy said, Applicant was out on bond for the Murder charge when the Carjacking and Armed Robbery occurred. Leddy noted that by separating the prosecution of the crimes into two trials, Applicant could receive a life without parole sentence ("LWOP") under the two/three strike law even if the jury returned a verdict for a lesser offense such as voluntary or involuntary manslaughter. Leddy noted this was a *real* concern as the state had "a strong case" against Applicant for the Armed Robbery and only needed to convince the jury of a crime classified as "most serious" at the Murder trial to subject Applicant to LWOP.

On cross-examination, Leddy testified he recalled discussing strategy with Applicant and counsel prior to the plea, and noted they certainly would have investigated potential defenses available to Applicant such as self-defense and mere presence had Applicant decided he wanted to go to trial. However, Leddy said, Applicant made the voluntary decision to enter the plea without coercion or threats from himself or counsel. Leddy also noted he had seen the discovery file and would have been aware of all witness statements in discussing the matter with Applicant. He said he never had any concerns with Applicant's ability to comprehend their discussions about the case and couldn't specifically recall whether Applicant openly admitted his guilt . . . during their meetings. Leddy testified he and counsel were not yet fully prepared for trial on the murder charge at the time Applicant decided to plea as that matter was not yet on the trial docket, but there would have been further investigation and preparation done had Applicant said he wanted to go to trial. Leddy finished by stating he was "sure [Lee] would have talked to [Applicant] about self-defense" as a possible theory of defense at trial, and plainly explained neither he nor counsel *ever* told Applicant what answers to give to the plea judge during the hearing.

(R. at 116-19.)

The PCR court found Petitioner's "testimony as to his rendition of the facts leading to the charges, his conversations with counsel (or lack thereof) prior to the plea and his understanding of

the legal theories and defenses related to his case to all be entirely not credible." (R. at 119.) On the

other hand, the PCR court found Leddy's testimony "to be credible, particularly in regard to his and

counsel's conversations with Applicant prior to the plea and the pretrial preparations/investigations

undertaken." (R. at 119.)[7] In rejecting Petitioner's claim of ineffective assistance of counsel and an

involuntary guilty plea, the PCR court stated,

> The credible testimony and the record firmly convince this Court Applicant's pleas were entered freely, intelligently and voluntarily with full knowledge and understanding of all relevant issues, concerns, potential defenses and penalties related thereto, in accordance with the requirements of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969). Applicant readily admitted he was aware he would be waiving his right to present defenses and/or otherwise challenge the state's evidence by pleading guilty. Counsel adequately advised Applicant of all relevant issues and matters pertinent to the case to allow Applicant to make an intelligent, informed and voluntary decision on whether to enter a guilty plea or proceed to trial. Applicant, with full knowledge of the nuances and particulars of his case, made the voluntary and informed decision to forfeit his right to a jury trial and accept an advantageous plea offer from the state. Applicant has failed to carry his burden of proving counsel was deficient in any way in his representation of Applicant on the charges; in fact, the credible testimony before this Court indicates counsel's representation was carried out in a professional and thorough manner to ensure Applicant the best possible outcome. Accordingly, this Court finds counsel was not objectively unreasonable in any area of his performance.
>
> Further, this Court finds Applicant has failed to prove resulting prejudice from counsel's alleged deficient representation. First, Applicant failed to provide this Court with any evidence to support the claim that counsel failed to properly investigate the case. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." Morehead v. State, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998). Finally, Applicant has failed to convince this Court there is *any* "reasonable likelihood" that had counsel undertaken any further preparations or investigation to prepare a defense for trial, Applicant would not have pled guilty but rather proceeded to trial on the charges. As testified by Leddy, Applicant was facing two separate trials on the charges where conviction was almost certain for Armed Robbery at the first

---

[7]Such factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003);cf. Wilson, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."). Petitioner has not met that burden.

trial. Thereafter, the state would have the opportunity to seek a LWOP sentence if Applicant were convicted of the murder charge as indicted, *or* the lesser included offenses of Voluntary or Involuntary Manslaughter. With this background, Leddy's credible PCR testimony and the record before this Court, it is clear Applicant has failed to prove that "but for counsel's alleged deficiency," he would not have pled but rather insisted upon proceeding to trial.

(R. at 119-20.)

It appears that some of Petitioner's allegations of ineffective assistance of counsel are procedurally barred. As the Fourth Circuit stated in Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." Id. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

Longworth, 377 F.3d at 448. As noted above, in Ground One, Petitioner asserts that trial counsel "misadvised Petitioner in pleading to the offenses would result in a lesser included offense" and contends that "'words alone' without more are not sufficient evidence to sustain a sentence and conviction under the law." (Dkt. No. 1.) It does not appear that the state court addressed this allegation of ineffective assistance of counsel; as such, it is procedurally barred. See, e.g., Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan. 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because

11

the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion.[8] In Ground

One(A) and Ground Two, Petitioner asserted counsel was ineffective because "armed robbery and

carjacking should be treated as one offense" given that they "occur[red] . . . so closely in point of

time that they may be considered as one offense." (Dkt. No. 1-1 at 1 of 9.) Petitioner did not raise

this claim during his PCR hearing, and it is not addressed in the PCR court's order; it is therefore

barred. See id. The same is true of Petitioner's contention in Ground Three that counsel was

ineffective because Petitioner believed he was pleading guilty to involuntary manslaughter, when in

fact the record reveals he pled guilty to voluntary manslaughter.

To the extent Petitioner contends in Ground One that his plea did not comply with the

mandate of Boykin v. Alabama, 395 U.S. 238 (1969), the state court's rejection of that claim is not

contrary to, or an unreasonable application of, clearly established federal law. Nor is it an

unreasonable determination of the facts. In Boykin v. Alabama, the Supreme Court held that in order

---

[8]Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, Bousley v. United States, 523 U.S. 614, 623 (1998); see also Schlup v. Delo, 513 U.S. 298, 327 (1995), or abandonment by counsel. Maples v. Thomas, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)).

In his Response in Opposition, Petitioner appears to assert actual innocence as a method to overcome the procedural bar. (See Dkt. No. 23 at 1 of 4.) From a review of his filing, it appears he asserts he is innocent of murder. (See generally Dkt. No. 23; Dkt. No. 23-1; Dkt. No. 23-2.) Of course, Petitioner was not convicted of murder; he was convicted of voluntary manslaughter. Petitioner contends that the "appropriate charge[] in [the] matter would have been § 16-3-60, involuntary manslaughter." (Dkt. No. 23 at 3 of 4.) Petitioner is incorrect. Involuntary manslaughter is defined as follows:

(1) the unintentional killing of another without malice, but while engaged in an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others.

State v. Smith, 391 S.C. 408, 414, 706 S.E.2d 12, 15 (2011) (citing State v. Cabrera-Pena, 361 S.C. 372, 380-81, 605 S.E.2d 522, 526 (2004)). The state courts have rejected arguments "that the word 'unintentional' in the involuntary manslaughter definition . . . mean[s] the defendant's intent to cause the consequence of death or serious bodily harm . . ." State v. Torrence, No. 2013-UP-152, 2013 WL 8507860, at *1 (S.C. Ct. App. Apr. 10, 2013). Petitioner does not contend that he unintentionally swung the shovel at the decedent; he has not made a showing sufficient to overcome the procedural bar.

to be valid, a guilty plea must be entered voluntarily and intelligently. Boykin, 395 U.S. at 242-43.

The Court stated that it could not "presume a waiver" of the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers "from a silent record." Id. at 243. "A valid guilty plea requires the defendant to have 'a full understanding of the charges against him and the possible consequences of his plea.'" Meyer v. Branker, 506 F.3d 358, 366 (4th Cir. 2007) (quoting Brady v. United States, 397 U.S. 742, 749 n.6 (1970)). A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970) (citations omitted).

During the plea hearing, the prosecutors went over the factual basis for the convictions, and although counsel stated that although she and Petitioner "substantially agree" with the facts as stated by the prosecutors, she amended the factual basis for the plea. (See R. at 4-9.) The following occurred during Petitioner's plea colloquy:

> MS. CAMPBELL: . . . As to the voluntary manslaughter charge, I believe Ms. Hendrick is going to address the armed robbery charges. This happened back on July the 23rd of 2005 . . . where the defendant, near the defendant's house in this matter, Your Honor, the victim in this case actually lived down the street, Mr. Brian Anthony Washington, Your Honor. They kind of lived on opposite ends of the Street.
>
> On the date in question, according to eye witnesses and other information we were able to get, the victim in this case was going down the street. He was approached by Mr. Doctor. There was some kind of some words. Apparently the victim owed Mr. Doctor some money or Mr. Doctor thought he owed him some money. At that point they did get into an altercation at which point Mr. Doctor picked up a shovel, hit him once in the leg and then once on the head.
>
> It is in dispute whether or not the victim actually at that point went down. There is some information that he may have been able to walk back up the street to the place, to his parents' house, Your Honor; or he may have been taken there anyway. Ultimately, about 36 hours later the victim was found. He had died while on the front porch of his mother's house. He was found.
>
> The Coroner's Office was called in. At that point they did do an autopsy. And experts would have testified that the victim died as a result of blunt force trauma to the head which would have been consistent with what witnesses had seen earlier as far as what Mr. Doctor had done to him. . . .
>
> . . . .

13

MS. HENDRICK: Your Honor, as to the carjacking and armed robbery, this did occur on October 22nd, 2006, late in the evening or early morning hours that at H&J's pub on Hard Scrabble Road in Richland County. There were three girls out for the night. They are the victims in this case. Two of the girls went into the pub to have some drinks and play pool. One of the victims remained sitting in the car.

This is kind of like a gas station type place. It's a gas station and a pub inside. The one victim that sat in the car, these two co-defendants pulled up next to her kind of in the pump next to her and saw her there. They approached her, asked–one of the victims–co-defendants; excuse me–got out of the car, approached the victim, asked her for a lighter. She gave him a lighter, then came to return the lighter. When he returned the lighter he actually pulled a gun on her and told her to drive the car; he would kill her.

She then drove the car for about 20 feet and managed to escape out of that and started running and screaming, telling everyone what happened. This is actually the co-defendant who did this actually. This defendant was actually in the van waiting on him to do this and was able to drive the van behind the car that they carjacked and was able to follow him.

As soon as the victim jumped out of the car, his co-defendant jumped in the driver's seat and they sped off through the parking lot. They eventually followed each other and wrecked the stolen car in a neighborhood nearby. The police were actually notified that the car had been located.

They got the victims in the car, were driving through that neighborhood to I.D. the stolen car when the victims actually saw the van driving by and were able to tell the police that that was the van that they saw. At that point the police got the girls out of the car, and they pursued on a chase throughout the neighborhood of the van. The van eventually wrecked. At this point I do believe the co-defendant was driving. He was in the passenger's seat. They both exited the vehicle and ran. The K-9 unit was called out and they were eventually found in a ditch.

THE COURT: Okay. All right. Okay. At this time then, Mr. Tremon Doctor, do you agree with those facts as indicated by the State?

MS. LEE: Judge, I believe substantially we agree. There are a couple of facts he wold like me to distinguish. First, as to Brian Washington, it is Mr. Doctor's position that it was actually Brian who came into his front yard. Is that right?

MR. DOCTOR: (Nods head affirmatively).

MS. LEE: And he absolutely disputes that he then carried Mr. Washington to his house afterwards. And I think that's substantiated by eye witness accounts in this case, that Mr. Washington actually walked himself back to his house and to his front porch. But absolutely we agree with the two strikes to Mr. Washington.

As to the second case, the armed robbery, Mr. Doctor would distinguish that actually the girls were speaking to Mr. Goins. I believe that this was some sort of drug

14

transaction that the girls had set up in the parking lot. And he would like me to distinguish that.

Other than that, Your Honor, we agree with the facts as stated by the solicitor.

THE COURT: Okay. So he is indicating on the armed robbery/carjacking that the girls set up a drug transaction. But then does he agree that there was a gun pulled on the girls and that they were asked to drive away and that a chase ensued and–

MS. LEE: Yes, Your Honor; by Mr. Goins. It was hand of one, hand of all on his part. But we do agree that Mr. Goins was involved on that.

. . .

THE COURT: All right. With those amendments by your attorney, Mr. Doctor, how do you wish to plead with respect to the charge of murder which is now going to be pled as voluntary manslaughter, as well as carjacking and armed robbery?

MR. DOCTOR: Guilty.

(R. at 4-9.)

After the factual basis for the plea was established, Judge Childs went over with Petitioner the rights he was giving up by pleading guilty. (See R. at 9-11.) Petitioner stated he understood he was giving up his right to a jury trial, where he could challenge the evidence presented by the state and then present "defenses testimony and other evidence" on his behalf. (R. at 10.) Petitioner indicated he understood that he was giving up his right to remain silent as well as his right to be presumed innocent until proven guilty. (R. at 10.) He stated he understood he was giving up the right to "actually challenge any of the evidence by trying to suppress any of the statements which [Petitioner's attorneys] deem was illegally obtained." (R. at 10.) He indicated he understood that if he went to trial, the state "has a high burden of proof which is beyond a reasonable doubt at trial, and that [the state] would have to prove these cases and convince 12 jurors and have a unanimous verdict in order to actually have [him] convicted." (R. at 10-11.) He stated that he understood that even if he presented a defense at trial, he would not have to testify. (R. at 11.) Petitioner answered, "Yes, ma'am" to the following question by Judge Childs:

> And then even knowing all of these rights that you would have including any particular Constitutional rights I have not mentioned, are you aware that you would give up all of these rights with respect to a plea of guilty today?

(R. at 11.)

Judge Childs asked Petitioner whether anyone had "threatened [him] or forced [him] in any way to plead guilty"; Petitioner said, "No, ma'am." (R. at 11.) She asked if Petitioner was pleading guilty of his "own free will" and "on a voluntary basis"; Petitioner said, "Yes, ma'am." (R. at 12.) Petitioner indicated he had enough time with his attorneys to make a decision as to whether to plead guilty or go to trial. (R. at 12.) The following also occurred during Petitioner's plea colloquy:

> THE COURT: So no one else has suggested any answers to you for the questions that I'm asking you?
>
> MR. DOCTOR: No, ma'am.
>
> THE COURT: Okay. And has anyone threatened you, forced you in any way to plead guilty today?
>
> MR. DOCTOR: No, ma'am.
>
> THE COURT: You're doing so freely and voluntarily?
>
> MR. DOCTOR: Yes, ma'am.

(R. at 14-15.)

On this record, Petitioner is not entitled to federal habeas relief on his claim that his guilty plea did not comply with the mandate of Boykin v. Alabama, 395 U.S. 238 (1969). See 28 U.S.C. § 2254(d); see also Doe v. Woodford, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting involuntary plea argument where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"); United States v. Solomon, 106 F. App'x 170, 171 (4th Cir. 2004); United States v. Robinson, 82 F. App'x

16

322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); United States v. DeFusco, 949 F.2d 114, 119-20 (4th Cir. 1991).

To the extent Petitioner alleges ineffective assistance of counsel in that there was insufficient evidence to convict him as to any of the at-issue convictions, Petitioner is not entitled to federal habeas relief. See LoPiano v. State, 270 S.C. 563, 569, 243 S.E.2d 448, 451 (1978) ("We are not here concerned with the weight or sufficiency of the evidence to sustain a conviction. By entering a plea of guilty, LoPiano waived his right to attack his conviction on this ground. Since we have determined that LoPiano's plea was entered voluntarily and understandingly, he does not now have the right, in post-conviction proceedings, to attack the plea upon the ground that the facts were insufficient to establish the offense to which he pled."); see also United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("Because we conclude that Willis' voluntary and intelligent guilty plea constitutes an admission of all the elements of the firearm offense, and therefore forecloses his right to challenge his conviction on the grounds alleged, we affirm his conviction.").

### B. **Grounds Four Through Six**

In Grounds Four through Six, Petitioner contends the "court's [sic] erred in finding 'words alone'" are sufficient evidence to support his convictions. (See generally Dkt. No. 1-1.) Petitioner's argument with respect to these grounds is unclear. However, Petitioner is not entitled to federal habeas relief. To the extent Petitioner asserts errors of state law, such claims are not cognizable in the instant action. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990))); see also 28 U.S.C. § 2254(a); Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law). To the extent Petitioner asserts the evidence was insufficient to support his convictions, that claim fails for the

reasons set forth above in Section A. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment as to Grounds Four through Six.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 19) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[9]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 20, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[9]    Title 28, Section 2253 provides in relevant part,

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).